NATHANIEL HOBBS, Judge of Probate, *vs.* JOHN BENNETT et als.

York.    Opinion November 5, 1910.

*Executors and Administrators.    Action on Bond.    Instructions.*
*Witnesses.    Evidence.*

In an action on a probate bond, given by an executor on petition for sale of realty, for failure to pay to the residuary legatee her share of the proceeds upon a decree of distribution, evidence *held* not to show that the legatee authorized the executor, after the order of distribution, to invest her share in the estate, so as to discharge the sureties rendering it proper to refuse a request of the defendant which assumed the existence of a contract between the legatee and executor, authorizing him to handle her funds.

In such condition of the evidence, the giving of a request for plaintiff that if there was any such contract between the executor and the legatee, or for the definite extension of time for payment of her distributive share, and if such contract was induced by fraud or untrue statements of the executor, it would not constitute a valid contract nor release sureties on the bond, was not prejudicial.

In an action by a distributee of an estate in the name of the judge of probate on the executor's bond where the executor was called as a witness by plaintiff, his co-defendants and sureties could testify to any conversation made by him which tended to contradict his testimony, but their evidence of statements made by him in a conversation, not in the presence of plaintiff, was inadmissible for other purposes.

On motion and exceptions by two of the defendants.    Overruled.

Action of debt on a probate bond given by the defendant Bennett with the other defendants, Albert R. Leavitt and Silas M. Boothby, as sureties thereon.    Verdict for plaintiff for $2500.    The defendants Leavitt and Boothby filed a general motion for a new trial and also excepted to certain rulings.

The case is stated in the opinion.

*James O. Bradbury,* for plaintiff.

*Samuel M. Came,* for defendant Bennett.

*J. Merrill Lord, and Matthews & Stevens,* for defendants Leavitt and Boothby.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, JJ.

SPEAR, J.   This case comes up on motion and exceptions by the defendants.   It is an action on a probate bond, given by Bennett as executor of the will of Margaret R. Giveen on petition for sale of real estate, and is brought in the name of the Judge of Probate against Bennett and his sureties for the benefit of Julia S. Douglass, residuary legatee under the will.   The bond in suit was legally filed in the Probate Court of York County at the February term, 1897, and contains the usual statutory provisions.   It appears from the testimony that the executor settled three accounts, one in April, 1896, one in October, 1899, and one in December, 1899.   On the 6th day of February, 1900, upon a petition filed prior to that time upon which due notice was given, the Judge of Probate made a decree of distribution directing, with the exception of ten dollars ($10) that the balance in the hands of Bennett, as executor, should be distributed as follows:   To Emma P. Sands, $856.00; to Julia S. Giveen, the actual plaintiff, $2568.00; with an order to deposit in the Limerick National Bank in Limerick, York County, in the name of the Judge of Probate, any sums remaining unpaid after six months.   The executor paid Emma P. Sands her distributive share but did not pay Julia S. Giveen, who after her marriage appears in the case as Julia S. Douglass.   On the 19th day of June, 1905, Mrs. Douglass having received but a few hundred dollars under the order of distribution, filed a petition for authority to bring suit upon the bond in the name of the Judge of Probate, to recover the damages sustained by reason of the alleged negligence or malfeasance of the executor.   It appears that the plaintiff had received from time to time $319.00 from the executor, and the jury brought in a verdict for the plaintiff for $2500.00.

   The main defense offered at the trial seems to have been a denial by the sureties of their signatures purporting to appear upon the bond.   Upon this issue the jury found a verdict in favor of the plaintiff and without discussion of the testimony, it is the opinion of the court that the verdict cannot be disturbed.

The defendants at the trial also raised another issue of fact, which they aver if found in their favor would constitute a legal defense, namely, that the plaintiff, after the executor had been ordered to make a distribution of the estate remaining in his hands, by a contract with him express, or fairly implied from the testimony, allowed him to retain in his possession her distributive share, $2568.00 for the purpose of investing it for her benefit thereby becoming her agent in the use to which he put her money, whatever it may have been; that, inasmuch as he was under no obligation to account to the probate court for the performance of the order of distribution, but simply to pay over the money in his hands and take the receipt of the distributee therefor, any arrangement he might make with the distributee with reference to the disposal of the money in his hands would be binding upon such distributee and would after that date release the sureties upon his bond. Upon this theory the defendants requested the presiding Justice to instruct the jury as follows: "If the jury find that subsequent to the order of distribution, John Bennett held and invested the amount due plaintiff in interest under said order for the purpose of income therefrom for the benefit of the plaintiff, and that such investment was assented to and known by said plaintiff, such act would be outside the scope of his authority as such executor, and the sureties upon his official bond would not be holden." The instruction was refused and exception taken and allowed. The plaintiff proceeded upon a different theory and requested the court to give this instruction: "That if any alleged contract was entered into between Mrs. Douglass and Mr. Bennett for the alleged handling of the funds by him or for the definite extension of time for the payment of her distributive share, and if such contract was brought about or induced by any fraudulent or untrue statement made by him to her, it would not constitute a valid contract, and would not release the sureties from their liability on the bond in suit." This was given and exceptions taken. In view of the fact that the evidence when fairly considered in the light of all the circumstances and probabilities involved in the case, shows that each of the requested instructions assumed a statement of fact not deducible from the evidence, namely, that a contract was made

with the executor by the plaintiff authorizing him to handle her funds, the request of the defendants was improper and that of the plaintiff harmless.

The plaintiff appears very frankly to have stated her relations with the executor during the years in which he was claiming to her to be engaged in the settlement of Mrs. Giveen's estate. She readily admits that she received money from him after the order of distribution, called interest, and that she gave receipts for remittances, so called. Her true understanding of the nature of the remittances may be inferred from the following question and answer : Q. He paid you interest? A. It was called interest, but I do not know whether it was interest or not. At the end of her testimony she says she had no actual arrangement or agreement with Mr. Bennett in regard to his holding the funds belonging to her and paying her interest thereon. We are unable to find any evidence in her testimony that would warrant the inference that she by express or implied agreement authorized Bennett, the executor, to make use of her funds in the manner in which he evidently did. But were such an inference possible, we think it is fully negatived by the letters offered in evidence from Bennett to her. These letters, and the course of proceeding portrayed in them, clearly warrant the inference that the estate of Mrs. Giveen, and consequently the distributive share belonging to the plaintiff, were being used by the executor upon his own responsibility long prior to the date of the order of distribution.

It is very easy from Bennett's letters to discover why the plaintiff called the money which she received—interest. An examination of his correspondence with her will show that on July 26, 1899, long before the order of distribution, he wrote her saying, "I will go right to work on the business so as to get matters ready for a settlement, although it will take time to get the investments all into money, as I have been getting better than bank interest." On October 19, 1899, he again wrote, "After the bills against the estate were settled, the balance was placed at interest. The amount of the estate I have allowed to accumulate but perhaps it would have been more satisfactory to you had I paid it to you annually, but as

long as you get it all right now at the last end you will be all right."
January 4, 1900, before the order of distribution, he again wrote,
"I have been quite successful in obtaining a high rate of interest,"
etc.  Again on January 29, 1900, also before the decree of distri-
bution he wrote, saying, "In order to obtain such a high rate of
interest I have had to invest in all kinds of ways, as I wanted to
get a good rate of interest while I had the control."

It is very important in analyzing this testimony in its bearing
upon the plaintiff's understanding of the word "interest" to observe
that these letters were all written before the decree of distribution
and consequently before the plaintiff was entitled to any part of her
distributive share.  But notwithstanding this, the executor was
informing her of the accumulation of interest upon the estate, saying
it might have been more satisfactory had he paid it annually, "but
as long as you get it all right now at the last end, you will be all
right."  This letter specifically states that the money she is getting
at the "last end" is the interest accumulated upon the estate; and
while she received what was called "interest" after the order of
distribution, there is no evidence in the case which tends in the least
to show that she had any knowledge of any distinction between the
meaning of what was termed interest before the order of distribution
and what was termed interest after such order.  The inference
is, therefore, irresistible that the plaintiff did not receive any
interest after the order of distribution which she can be fairly said
to have known or understood to have come from the investments by
the executor of her distributive share of the estate.  On the contrary
it seems to us that it is fully established by Bennett's letters that he
had invested the proceeds of the whole estate before the order of
distribution was made and was undoubtedly guilty of a breach of
his bond before the date of the order.  The above quotations from
his letters are inconsistent with any other conclusion.  On October
19, 1899, he expressly said, "After the bills against the estate were
settled the balance was placed at interest."  October 29, he says,
"In order to obtain such a high rate of interest I have had to invest
all kinds of ways."  This was about four months before the order
of distribution.  The case is silent upon any change of these invest-

ments, after the order of distribution, with even an intimation of the knowledge or consent of the plaintiff. In fact, there is no evidence of any change at all either with or without her consent. Upon this undisputed and unequivocal evidence of Bennett's letters, written at the time when he was evidently using every expediency at his command to blind her to the true situation of the estate, and postponing a settlement as long as possible, it is the opinion of the court that, whether the executor was guilty of a breach of his bond before the date of the order of distribution or not, the plaintiff had no definite knowledge at all about the estate, much less sufficient to enable her to make an agreement with reference to the investment of her share. The evidence, then, appearing to be conclusive against the contention of the defendants that the plaintiff authorized the executor, after the date of the distribution, to invest her share in the estate, we reiterate that the defendants' requested instruction assumed facts not proven and was therefore improper, and the plaintiff's request whether proper or improper was harmless.

The other exceptions raised by the defendants may be considered together as they practically involve the same question. Upon the issue of signature the defendants offered to show a conversation between Bennett and his co-defendants, claimed to be relevant, but not made in the presence of the plaintiff. Bennett had been called as a witness by the plaintiff, and the court ruled that the co-defendants could testify to any conversation made by Bennett which tended to contradict his testimony, but that his evidence beyond that, not made in the presence of the plaintiff, was inadmissible. We think the ruling was right. It may be proper to say that the question, relative to the renewal of notes, offered and excluded, is not shown from any statement in the exceptions to have been material to the issue involved.

It is further claimed that the plaintiff has failed to show any demand upon the executor for the payment of the legacy due her. We cannot construe the evidence in this way. The whole effect of her evidence, for the years covered by the correspondence in this case, shows that she was continually demanding payment of the amount due her from the estate. While no specific statement can

be construed into a demand, the effect of the evidence clearly shows one. The defendants upon this point rely upon a statement as tending to show that she asked only for interest; but a specific answer brought out on cross-examination for the purpose of establishing a technical legal defense, cannot be permitted to overcome a perfectly · apparent conclusion based upon a reasonable inference from all the evidence presented. In fact, whatever she may have said in her testimony and whatever she may have written to the executor, to declare upon the evidence in this case, that the plaintiff was not constantly demanding, for a period of four years, payment of the amount due her from this estate, would tend to disparage the value of common sense and override the ends of justice.

*Motion and exceptions overruled.*